IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:18-CR-30-D-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORMAN LYDELL FORD, | ) | |
| Defendant. | ) | |

On October 5, 2020, Norman Lydell Ford ("Ford" or "defendant") moved for appointment of counsel to assist him in filing a compassionate release motion [D.E. 39]. That same day, the court appointed counsel for Ford pursuant to standing order 19-SO-3 [D.E. 40]. On June 15, 2022, Ford, through counsel, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 50] and filed a document in support [D.E. 51]. On July 19, 2022, the government responded in opposition [D.E. 55]. On July 22, 2022, Ford replied [D.E. 56]. As explained below, the court denies Ford's motion.

I.

On January 24, 2019, pursuant to a written plea agreement, Ford pleaded guilty to conspiracy to distribute a quantity of cocaine base ("crack") (count one) and to distributing a quantity of cocaine base ("crack") (count seven). See [D.E. 1, 26, 28]. On May 15, 2019, the court held Ford's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 33]; [D.E. 36]. The court calculated Ford's total offense level to be 29, his criminal history category to be VI, and his advisory guideline range to be

151 to 188 months' concurrent imprisonment on counts one and seven. See PSR ¶¶ 62, 74. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court granted Ford's motion for a downward variance and sentenced Ford to 120 months' concurrent imprisonment on counts one and seven. See [D.E. 36, 37]. Ford did not appeal.

On June 15, 2022, Ford, through counsel, moved for compassionate release. See [D.E. 50]. The government opposes the motion. See [D.E. 55].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion

2

requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's

3

age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Ford applied to his warden for home confinement under the Cares Act and received a denial on June 6, 2020. See [D.E. 50-1] 3. On June 7, 2020, Ford again requested home confinement. See [D.E. 50] 5; [D.E. 50-1] 1–2. On July 8, 2020, the warden denied his request. See [D.E. 50-1] 3. On July 15, 2020, Ford appealed. See id. at 4. On October 10, 2020, the BOP Regional Director denied the appeal. See id. at 6. Ford appealed to the Administrator of National Inmate Appeals and received a denial on January 14, 2021. See id. at 8. On April 8, 2022, Ford, through counsel, applied to his warden for compassionate release. See id. at 9. Ford received no response. See [D.E. 50] 5. More than 30 days lapsed before Ford moved for compassionate release, and the government has not invoked section 3582(c)(1)(A)'s exhaustion requirements. See [D.E. 55]. Therefore, the court assumes that Ford met the exhaustion requirement and addresses Ford's motion on the merits. See Muhammad, 16 F.4th at 130.

Ford seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his medical conditions (borderline obesity, hypertension, anemia, hyperlipidemia, and history of substance abuse), his rehabilitative efforts, his release plan, and his time served. See [D.E. 50] 5–23; [D.E. 51]; [D.E. 56] 1–10.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that

4

substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Ford is borderline obese and has hypertension, hyperlipidemia, anemia, and a history of substance abuse. See [D.E. 51] 13; PSR ¶ 48. He argues his medical conditions put him at heightened risk of serious infection from COVID-19. See [D.E. 50] 12–16. Other than the risk from COVID-19, Ford does not argue that the BOP is not providing needed treatment for his medical conditions or that he is unable to manage his medical conditions while incarcerated. His medical conditions are under control. See, e.g., [D.E. 51] 1, 4. And Ford has received two doses of the Pfizer COVID-19 vaccine. See [D.E. 55-1]. The vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes

5

it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). The wide availability of COVID-19 vaccines greatly diminishes the risk to Ford from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, reducing Ford's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Ford's medical conditions, his rehabilitative efforts his release plan, and his time served are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Ford's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Ford is 48 years old and engaged in serious criminal conduct between 2015 and 2018. See PSR ¶¶ 1–5, 8–9. Ford is a lifelong criminal and drug dealer, with convictions beginning in 1992. See id. ¶¶ 14–29. Before Ford's federal conviction, Ford amassed state felony convictions for possession with intent to sell or delivery cocaine (four counts), common law robbery, selling or

6

delivering schedule II controlled substances, possession with intent to sell or deliver marijuana (two counts), selling or delivering cocaine, manufacturing schedule II controlled substances, manufacturing schedule VI controlled substances, possession of marijuana, and maintaining a vehicle, dwelling, or place for controlled substances. See id. ¶¶ 14–16, 20, 22, 25–27. Ford also has state misdemeanor convictions for assault on a female, breaking or entering, driving while license revoked, carrying a concealed weapon (two counts), simple possession of schedule VI controlled substances, fleeing or eluding arrest with a motor vehicle, resisting a public officer, and criminal contempt (four counts). See id. ¶¶ 14, 17–19, 23–24, 28–29. Ford also has a poor record on supervision, having had his probation revoked twice. See id. ¶¶ 16–17. While in state custody, Ford incurred 18 infractions. See id. ¶¶ 16, 20, 25.

Ford has made some positive efforts while federally incarcerated. He has taken courses on personal finance and career readiness, among other topics. See [D.E. 50-3]. Ford has not incurred infractions while federally incarcerated. See [D.E. 50] 21; [D.E. 50-2] 2.

The court must balance Ford's positive efforts while federally incarcerated with his serious criminal conduct, his extensive and violent criminal history, his history of poor performance on probation and in state custody, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Ford's potential exposure to COVID-19, his medical conditions, his rehabilitative efforts, his release plan, and his time served. Ford has a release plan that includes living with his mother in Plymouth, North Carolina, taking HVAC classes, and working in carpentry or at the nearby egg plant. See [D.E. 50] 21; [D.E. 50-5]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the

7

section 3553(a) factors, Ford's arguments, the government's persuasive response, the need to punish Ford for his serious criminal behavior, to incapacitate Ford, to promote respect for the law, to deter others, and to protect society, the court denies Ford's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

Ford asks the court to reduce his sentence or order home confinement as part of supervised release. See [D.E. 50] 23. Ford cited the CARES Act in his requests to his warden but does not cite it in his motion for compassionate release. See [D.E. 50, 56]. The court declines to reduce Ford's sentence, order his release, and order home confinement as part of supervised release. Cf. United States v. Simon, No. 20-6701, 2022 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (per curiam) (unpublished). Moreover, the CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Ford is requesting that the court recommend home confinement to the BOP, the court declines.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 50], DENIES as moot defendant's motion to appoint counsel [D.E. 39], and DENIES as moot the government's

8

motion for an extension of time to respond to defendant's motion for compassionate release [D.E. 54].

SO ORDERED. This 24 day of October, 2022.

JAMES C. DEVER III
United States District Judge